Counsel for respondents petitioned for a rehearing. They and others appearing amici curiae suggest that, the statement in the opinion to the effect that neither of the parties having questioned the validity of the statutes considered, their validity would be assumed without further consideration, raises a question as to the constitutionality of the law. Where neither party challenges the validity of a statute a contention that the court's failure to do so raises a question as to its constitutionality is an unwarranted assumption.
In view of neither of the parties in the former hearing having raised any question with regard to the validity of Sess. Laws 1921, chap. 218, p. 483, and Sess. Laws 1923, chap. 84, p. 96, chap. 88, p. 100, amendatory to the irrigation district law, C. S., title 33, chap. 175, which were considered *Page 132 
as having been passed to make plain the purpose of the legislature that the bonds of an irrigation district shall be general and not special obligations, a rehearing was granted and a reargument of the case has been had.
The lands included in respondent American Falls Reservoir District are almost entirely made up of lands that are within the territory of canal companies already completed and operating, under the management and control of their respective organizations, as they now exist. The creation of respondent district is for the purpose of providing an additional supply of water to the users of water under these already constructed systems. We understand that it is not intended that this newly organized district shall take over, supplant or otherwise interfere with the management or control of the existing systems as they are now operating, except in so far as the use and application of this additional supply of water to these lands through the present systems may require.
The constitutionality of the irrigation district law, C. S., title 33, has been so frequently sustained that it is no longer open to question. (Pioneer Irr. Dist. v. Bradley, 8 Idaho 310, 101 Am. St. 201, 68 P. 295; Nampa etc. Irr. Dist. v. Brose,11 Idaho 474, 83 P. 499; Knowles v. New Sweden Irr. Dist.,16 Idaho 235, 101 P. 87, on rehearing; Progressive Irr. Dist. v.Anderson, 19 Idaho 504, 114 P. 16.) Many of these decisions refer to and approve the holdings of other courts sustaining the Wright Act, Laws of California, 1887, p. 29; Henning's General Laws of California, 1920 ed., p. 1221 et seq., which is very similar to the Idaho law. Among the decisions sustaining its constitutionality are the following: Turlock Irr. Dist. v.Williams, 76 Cal. 360, 18 P. 379; Crall v. Board of DirectorsPoso Irr. Dist., 87 Cal. 140, 26 P. 797; In re Madera Irr.Dist., 92 Cal. 296, 27 Am. St. 106, 28 P. 272, 675, 14 L.R.A. 755; Cullen v. Glendora Water Co., 113 Cal. 503,39 Pac. 769, 45 P. 822, 1047. In re Central Irr. Dist., 117 Cal. 382,49 P. 354; People v. Linda Vista Irr. Dist., 128 Cal. 477,61 Pac. 86; Escondido High School Dist. v. Escondido Seminary, *Page 133 130 Cal. 128, 62 P. 401; Fallbrook Irr. Dist. v. Bradley,164 U.S. 112, 17 Sup. Ct. 56, 41 L. ed. 369.
Respondents do not contend that this appeal is from the judgments of confirmation entered in the district court March 24, 1923, August 17, 1923, and December 20, 1923, which decrees confirmed respectively (1) the organization of the district, (2) the authorization of the bonds issued, and (3) the authorization and execution of the contract with the United States. They do contend, however, that the record in this proceeding presents for review all of the proceedings had and determined by these former proceedings which culminated in these several decrees, and that C. S., sec. 4364, requires the court in this proceeding to reaffirm all of those former proceedings and declare that the decrees mentioned are resjudicata and bind all the world against any attack of any character whatsoever. Respondents offer to withdraw their objection made in this proceeding to the admissibility of certain testimony on the ground that said former proceedings and decrees entered therein were res judicata, so that this court may now reconsider the matters adjudicated by the former proceedings which appear in the record and were admitted in evidence without objection as Exhibits "A," "B" and "C." Respondents also contend that appellants' answer in this proceeding is a direct and not a collateral attack upon these former decrees, and that this court may now consider whether the notice required by C. S., sec. 4318, was published as required by law, which is one of the errors particularly relied upon by appellants for invalidating the organization of the district, on the ground that the failure to give it was jurisdictional. If we understand respondents' position it is that although these former decrees are in rem, were not appealed from and have become final as against all the world, it is still necessary to determine the questions presented by this proceeding and to consider all of these former proceedings and declare they are "as to all parties interested in the subject matter and as to all the world final and conclusive, and the questions therein disposed of are res judicata." *Page 134 
The purpose of this proceeding, as stated in the petition, is "for examination, approval and confirmation of the apportionment of benefits and of the cost of construction of the American Falls Reservoir. . . . and of the purchase of a proportionate share of the storage capacity . . . . from the United States."
The decree in this proceeding, among other things, recites:
"That all and singular the proceedings and actions of the board of directors of the American Falls Reservoir District, the officers of said district and all persons acting in the premises, in the assessment of benefits and the apportionment of costs of construction and purchase on account of the construction of the American Falls Reservoir at American Falls, Idaho, and the purchase of a proportionate share of the storage capacity thereof and of the water to be made available therein, by the American Falls Reservoir District, be and the same hereby are confirmed. . . . . That all of the lands within the present boundaries of the American Falls Reservoir District have been and will be benefited by the organization of the territory described in the order of organization by the county commissioners as an irrigation district; that the amount of the benefits which will accrue to each lot, tract or subdivision . . . . are shown upon the list of the apportionment for benefits which comprise ten (10) bound volumes. . . . . That the board of directors caused to be made a list of said apportionments and distribution as last above stated; that said list contains a complete description of each lot, tract or legal subdivision . . . . with the amount and rate per acre of said apportionment and distribution of costs and the name of the owner thereof. . . . . That the bonds of the American Falls Reservoir District may be made available for the purposes stated in sec. 7, chap. 218, Idaho Compiled Laws (Session Laws) for the year 1921. . . . . That the resolution adopted by the board of directors. . . . assessing the benefits and apportioning the costs of construction and purchase, under date of August 24, 1923, was and is valid and constitutes a binding obligation on the part of the American Falls *Page 135 
Reservoir District as to the matters and statements therein contained. . . . . That the decree heretofore entered in this court in the matter of confirmation of the organization of the American Falls Reservoir District, of the authorization of bonds in the sum of $2,700,000.00, and the authorization . . . . of a contract with the United States . . . . were and are as to all parties interested in the subject matter and as to all of the world final and conclusive, and the questions therein disposed of were and are res judicata."
It is a matter of common knowledge that bonds about which there is no question as to their validity and payment at maturity can be sold for more than bonds which are liable to be assailed and questioned years after their issuance, and that bonds of doubtful validity are reluctantly taken at any price. It was doubtless for the purpose of settling this class of questions in advance and thereby making the bonds of irrigation districts more readily salable and at better prices than they would otherwise command that the legislature passed the confirmation acts providing that districts might, before offering their bonds, have all questions affecting their validity judicially and finally determined. The confirmation proceeding is in the nature of a proceeding in rent, the object being to determine the status of the district and its power to issue valid bonds. (Crall v. Board of Directors Poso Irr.Dist., supra; Fogg v. Perris Irr. Dist., 154 Cal. 209,97 Pac. 316; Pioneer Irr. Dist. v. Bradley, supra; Nampa etc. Irr.Dist. v. Brose, supra; Emmett Irr. Dist. v. Shane, 19 Idaho 332,113 P. 444; Progressive Irr. Dist. v. Anderson, supra.)
In a proceeding to examine, approve and confirm the assessments for benefits and the apportionment of costs assessed against the lands in an irrigation district for constructing or purchasing a proposed irrigation system, it must necessarily be determined as an incident to such confirmation that there is such a district. In the instant proceeding, to establish the existence of the district, respondents offered and there was received in evidence a certification of the proceedings had to create this district. *Page 136 
Upon the confirmation of such proceedings the lower court specifically found, in accordance with the requirements of C. S., secs. 4313 to 4328, (1) that the required number of holders of title to lands signed the petition for organization; (2) that this petition was presented to the board of county commissioners of the proper county, together with maps and cross-sections; (3) that it was accompanied by a duly approved bond; (4) that a general notice of the filing of a petition for the organization of an irrigation district was given, and that notice of the hearing on said petition was given in a newspaper published in all the counties wherein any land of said district was situated; (5) that the notice required by C. S., sec. 4318, of the time of the hearing upon said petition was published in a newspaper in each and every county in which any part of said district is situated; (6) that a copy of said petition and all maps and other papers filed with the same were filed in the office of the Department of Reclamation; (7) that an order was made by the county commissioners of Twin Falls county describing the lands determined to be included in the district and stating that such lands would be organized into an irrigation district if the vote of the electors be favorable, and in the finding there follows a description of each separate subdivision of the lands in such district; (8) that said board of county commissioners divided the district into seven divisions; (9) that said commissioners gave notice of an election to be held in the proposed district for the purpose of determining whether or not the territory should be organized into a district and designated the manner of voting for or against said district; (10) that the said county commissioners established seven election precincts; (11) that immediately after said election the board canvassed the vote cast at such election and found there were 7,228 votes east for the organization of the district and 1,254 against its creation, and therefore declared the territory duly organized as an irrigation district under the name and style of the American Falls Reservoir Irrigation District, and the seven persons named as voted for to be the duly elected directors *Page 137 
of such district; (12) that said commissioners did on January 22, 1923, cause a copy of the order declaring said district organized, entered upon its minutes and certified the same for record in the offices of the county recorders in the several counties mentioned, which order contained a particular description of the lands included; and thereafter the persons named as directors of said district organized as a board and designated Twin Falls in Twin Falls county as the place within the district for the principal office of said board of directors, and the board of directors appointed a secretary and treasurer.
All these findings made by the lower court are supported by the record, except as to the giving of the notice designated in C. S., sec. 4318, hereafter considered, and all the proceedings taken in connection with the organization of said American Falls Reservoir District were regular and lawful. The conclusions that the territory embraced within the order of the county commissioners of Twin Falls county was duly organized as an irrigation district under the laws of the state of Idaho under the name and style of "American Falls Reservoir Irrigation District," that it was legal and valid and the territory therein described was legally organized as an irrigation district, that the seven directors named were duly and lawfully elected, are in accordance with said findings. The decree of confirmation entered thereon is in accordance with said findings and conclusions.
The subsequent proceeding for the examination, approval and confirmation of the authorization of an issue of bonds of the American Falls Reservoir District for $2,700,000, and the record of the proceeding for examination, approval and confirmation of a contract for the construction by the United States of the American Falls Reservoir and furnishing to the American Falls Reservoir District a proportionate share of the storage capacity of said reservoir to the maximum amount of 300,000 acre-feet, and the decrees entered thereon confirming said action of the board of directors, appear in all respects regular and to conform to the requirements of the statute authorizing the same. *Page 138 
 Nampa etc. Irr. Dist. v. Brose, supra, was a proceeding to obtain a judicial confirmation of the organization of an irrigation district and of the proceedings relating to the issuance of bonds for the enlargement of an existing canal system. In construing sec. 19, Sess. Laws 1903, p. 168, the court says:
"Under the provisions of section 19 of said act, the court is empowered and is given jurisdiction upon the hearing of this proceeding, to examine and determine the legality and validity of, and approve and confirm each and all of the proceedings for the organization of such district under the provisions of said act, from and including the petition for the organization of the district, and all other proceedings which may affect the legality or validity of such bonds and order for the sale, and the sale thereof. . . . ."
This section was amended by the proviso in C. S., sec. 4364, which provides for the filing of separate petitions for the confirmation of different portions of the proceedings and that subsequent proceedings may be in the name of reopening of the same case, but shall not be considered as authorizing any rehearing of the matter theretofore heard and decided.
In Progressive Irr. Dist. v. Anderson, supra, under the section as amended, it is held:
". . . . the board of directors of an irrigation district may go into the district court for confirmation of all of the proceedings, and the entire proceedings in regard to the organization of a district may be confirmed in the one action. While the laws of 1903 do not expressly authorize separate confirmation proceedings at different stages of the matter, said act as amended by sec. 2401, Rev. Codes (C. S., sec. 4364), authorizes a proceeding for confirmation after the organization of the district is completed, or after the authorization of bonds, and again after subsequent proceedings. . . . . While it was not necessary to have the former proceedings reconfirmed, the decree of reconfirmation did not deprive the district of any rights it acquired under the first decree. It may not have given the district any *Page 139 
further rights than it then had, and even if the pleader had not plead the first decree, the second petition would have authorized a decree confirming said entire proceedings."
In Smith v. Progressive Irr. Dist., 28 Idaho 812,156 Pac. 1133, it is held that where one has lands that he claims should be excluded from an irrigation district, he may assert his right at the confirmation proceedings, but if he fails to do so he cannot afterward complain, citing Knowles v. New Sweden Irr.Dist., supra, and again declaring that the proceedings relative to the organization of an irrigation district and the decree of confirmation by the court, are proceedings in rem and that constructive service of the notice is all that is required. (See also Emmett Irr. Dist. v. Shane, supra.)
These decisions hold that since the amendment of 1907 to C. S., sec. 4364, the directors of an irrigation district may go into court for confirmation of all the proceedings taken and have the same confirmed in one action, or may petition for the confirmation of any part of the proceedings, but when subsequent confirmation proceedings are had it is not necessary to have former proceedings reconfirmed, and a decree of reconfirmation does not deprive the district of any rights and does not give it any additional rights.
The former opinion in the instant case holds that as to all proceedings that were confirmed by the preceding decrees no additional rights are obtained by having a reconfirmation. However, in view of the urgent request of respondents to have examined the several judgment-rolls, "A," "B" and "C," and, as stated, find the statutory requirements upon which these decrees are based to have been followed, with the exception that the notice of the hearing before the board of county commissioners for the organization of the district, required to be given by C. S., sec. 4318, was not published in Jerome county. We are of the opinion, however, that this is not sufficient to invalidate the organization of this district. As held in the former opinion, the allegation of the answer "(b) That no *Page 140 
sufficient notice of the presentation of the petition or of the hearing on the petition before the County Commissioners was given as required by law" is not sufficient to raise this issue. To allege insufficient notice is an admission that appellants had some kind of notice. To allege that notice was not given "as required by law" is pleading a conclusion of law.
But waiving the insufficiency of the plea and considering the question upon merit, it was incumbent upon appellants — this being a proceeding in rem — to appear at the confirmation proceedings, of which due notice was given, and challenge the jurisdiction of the court to confirm the action of the board of county commissioners to create the district, if appellants contended that the notice required to be given by the statute was insufficient or had not been given.
In Fogg v. Perris Irr. Dist., supra, the validity of the organization of an irrigation district was challenged because 42 of the 50 signers required to the petition were not bonafide freeholders. The court said:
"We do not doubt that this was a fraud on the board, if concealed from it . . . . or that it would be a fraud upon the law and upon the property owners of the district, . . . . and that when shown to the court on a proceeding for confirmation, it would be sufficient cause for declaring the organization of the district invalid. It did not, however, make the organization of the district absolutely void, but only voidable. . . . . The purpose of the act of 1889, in providing for an adjudication as to the validity of the district, was to furnish a barrier against subsequent attacks upon the ground of such frauds in the organization of the district, and thereby to protect its bondholders. . . . . We think that the fraud alleged, although sufficient to have made the organization invalid if shown upon the hearing of the proceedings for confirmation, was not sufficient to deprive the court in that proceeding of jurisdiction to make the adjudication which is here sought to be vacated."
See, also, Crall v. Board of Directors Poso Irr. Dist.,supra. *Page 141 
Aside from the failure to publish in Jerome county the notice of the hearing before the board of county commissioners, which was subsequently cured, the proceeding to organize the district appears upon the face of the record to be regular and to show the district was created. It thereby became prima facie aquasi-municipal corporation, with defined boundaries established and recorded. This record constitutes constructive notice of the location of the boundary lines to all the inhabitants of the district and to the world.
Upon this rehearing appellants advance the contention that if the amendatory acts of 1921 and 1923 are construed in connection with the law as it was prior to their enactment, to make the bonds of an irrigation district general obligations against all of the lands of the district and to give the board of directors power to levy such additional assessments as may be necessary to meet any deficiency that may arise by reason of delinquencies, then the irrigation district law, when so construed, is unconstitutional because it would charge the lands upon which the assessments were paid for the benefits conferred upon lands that are in default, and this would be taking property without due process of law and without just compensation.
It must be conceded that if the bonds of an irrigation district and the interest thereon are to be paid by revenue derived from assessments upon the land in the district, and that all land within the district shall be and remain liable to be assessed for such payment, as provided by C. S., sec. 4369, it necessarily results in the lands that do not default in payment being assessed to meet the deficiency caused by the defaulting lands.
If the board of directors of any irrigation district, in order to improve its credit and the marketability of its bonds, or to reduce the rate of interest thereon, may lawfully insert into such contracts an agreement for a safety fund and provide such fund by making levies in excess of the amount which would actually be required if all taxes were paid without delinquency, as provided in Sess. *Page 142 
Laws 1923, chap. 84, p. 96, it may be that the assessments against some of the lands will be used to create this safety fund that will be taken to pay the delinquencies upon lands that do not pay.
The power of the legislature to levy a tax for governmental purposes is unlimited, except as such power may be restrained by the fundamental law. It was early said by Marshall, C. J., in McCulloch v. Maryland, 4 Wheat. (U.S.) 316, 4 L. ed 579, that the power to tax "is an incident of sovereignty and is coextensive with that to which it is an incident. All subjects over which the sovereign powers of states extend are objects of taxation."
Under the power to tax, which is one of the highest attributes of sovereignty, the title of the delinquent owner may be divested by sale. Where a tax for governmental purposes has been levied against property, the benefit from such taxation is conclusively presumed, and if levied in accordance with law the taxpayer cannot question the validity of the tax upon the ground that he is not benefited thereby.
The legislature is vested with the whole of the legislative power of the state and may deal with any subject within the scope of civil government, except so far as it is restrained by the provisions of the constitution, and is the sole tribunal to determine as well the expediency as the details of all questions of organized society, and is limited by such necessity, and its powers can be exercised only by some demand for the public use or welfare. And whether the tax be by direct imposition for revenue or by assessment for a local improvement, it is based upon the theory that it is in return for the benefit received by the person who pays the tax, or by the property which is assessed. (In re Madera Irr. Dist.,supra.)
In Oregon Short Line R. R. Co. v. Pioneer Irr. Dist., 16 Idaho 578,102 P. 904, it is held:
"The statute of this state authorizes the board of county commissioners to include within the boundaries of an irrigation district all lands which in their natural state would *Page 143 
be benefited by irrigation and are susceptible of irrigation by one system; and this is true regardless of the question as to what particular use is being made of any particular tract or piece of land at the time the district is organized."
The Idaho irrigation district law, since its enactment in 1895, has been frequently amended and modified to make it more applicable to existing conditions, but it has always recognized as a basic principle of the law, that the assessments levied by virtue of its provisions differ from a general tax levied for governmental purposes in the important particular that such assessments can only be levied upon the basis of benefits.
C. S., sec. 4359, requires that the board of directors of an irrigation district, as soon as practicable after its organization, shall by resolution formulate a general plan of the district's proposed operations which shall state what works are to be constructed or property purchased, the cost of the same and how it is proposed to raise the funds for carrying out the plan.
C. S., sec. 4362, provides that whenever the electors shall have authorized an issue of bonds the board shall examine each tract or legal subdivision of land within the district and determine the benefits which will accrue to each of such tracts from the construction or purchase of the irrigation works, and the cost of such works shall be apportioned or distributed to each subdivision in proportion to its benefits, and the amount apportioned to each subdivision shall be and remain the basis for fixing the annual assessments thereafter levied against each tract in carrying out the purpose of the district's organization.
Early in the history of this law, in Pioneer Irr. Dist. v.Bradley, supra, this court held that assessments can be levied upon the lands of an irrigation district only upon the basis of benefits to such lands. The law then provided that assessments might be levied according to the value of the land, which provision was thought to be unconstitutional because assessments were not required to be according *Page 144 
to benefits, and the statute was accordingly amended to require the assessments to be according to benefits.
In Nampa etc. Irr. Dist. v. Brose, supra, it was urged that the law did not contemplate including towns or villages within an irrigation district, but the court said that if the lands within towns or villages in such district will be benefited by irrigation under the proposed system, there is no ground upon which the court can say that their inclusion is void.
The opinion in Knowles v. New Sweden Irr. Dist., supra, was modified upon rehearing to the effect that the plaintiff in that action could not collaterally attack the organization of the district, the assessments and decree confirming the same. The opinions all hold that the foundation of the right to levy assessments by an irrigation district is based upon the benefits that will accrue to the lands of the district.
In Smith v. Progressive Irr. Dist., supra, the court recognized the principle when it said that no doubt if appellants had appeared at the confirmation proceedings and showed to the court that their lands would not be benefited, it would have excluded them from the district. In Nampa MeridianIrr. Dist. v. Petrie, 37 Idaho 45, 223 P. 531, the court, in construing C. S., sec. 4362, upon rehearing, said that an assessment for a drainage project based upon benefits must, like an assessment for any other public improvement, be based upon benefits immediately accruing or which will clearly accrue from the construction of the work.
The irrigation district law requires that after the electors have authorized an issue of bonds the board of directors are required to examine each tract in the district and determine the benefits which will accrue to each subdivision from the construction or purchase of the proposed irrigation works, and the cost of such work must be apportioned over the entire tract in proportion to the benefits. The board shall then make a list of such apportionment, which must contain a description of each tract in the district and the amount and rate per acre of such apportionment or distribution *Page 145 
of costs and the name of the owner. Any assessments made thereafter shall be spread upon the land in the same manner.
The list volumes in the instant case, numbered I to 10, inclusive, comply with these requirements and give the name of the owner, a description of the lands, with the irrigable area and the amount of benefits assessed, and the cost apportioned to each subdivision. These were all accessible to all persons in the district at the confirmation proceedings. It appears from these assessment-rolls that the amount of benefits assessed by the board is double the amount of the cost apportioned and that all the lands in the district are assessed in exact proportion to the amount of water to be furnished from this reservoir to the lands. While the total assessments against the lands in the different subdivisions of the district varies greatly, this variation is due to the amount of water apportioned to each particular tract, the cost per acre-foot being the same to all of the lands, showing that the board found a wide variation in the amount of water required for different lands within the district. All this was a proper subject of inquiry for the board, and the apportionment was made after notice had been given of the time and place of this hearing. Notice of the confirmation proceedings was given, and the owners of all land assessed were entitled to appear before the court in this proceeding, in which the court was authorized to correct all errors in the assessment, apportionment and distribution of costs. This constitutes due process of law and is not a taking of property without compensation.
The method which the legislature has provided and which has been followed is clearly within its constitutional power, and the law is valid and the proceedings had bind all the lands within the district and the owners thereof.
For the reasons given in the original opinion, as supplemented by this opinion on rehearing, the judgment of the district court is affirmed. No costs are awarded.
McCarthy, C.J., and Budge and Wm. E. Lee, JJ., concur. *Page 146